UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Crim. No. 6:18-cr-00029-GFVT-HAI-1 |
| V. | ) ) ) | |
| DANNY RAY VANOVER, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Danny Ray Vanover's Motion for Compassionate Release made pursuant to the First Step Act. [R. 72.] The United States has filed a response recommending the Court grant the motion. [R. 74 at 1–2.] For the reasons that follow, Mr. Vanover's motion is **GRANTED**.

**I**

On February 19, 2019, Mr. Vanover was sentenced by this Court to a total of 42 months imprisonment, following his guilty plea to one count of Conspiracy to Distribute Schedule II Controlled Substances, Oxycodone and Oxymorphone. [R. 66; R. 67.] Mr. Vanover is currently incarcerated at FMC-Lexington and, as represented on BOP Inmate Locator, projected to be released on January 13, 2021. [R. 74 at 2 (citation omitted).] As it stands, Mr. Vanover has served more than three-fourths of his sentence. [R. 21; R. 72 at 1.]

On April 5, 2020, Mr. Vanover requested early release from the Warden at FMC-Lexington based on his underlying health conditions. [R. 72 at 1; R. 72-2.] That request was rejected on April 28. [R. 72 at 2; R. 72-3.] On August 11, Mr. Vanover filed a motion for

compassionate release requesting relief from the Court under 18 U.S.C. § 3582(c)(1)(A). [R. 72 at 1.]

In his motion, Mr. Vanover argues his "health conditions make him more susceptible to contracting the deadly coronavirus (COVID-19)." *Id.* At age forty-six, Mr. Vanover has a variety of health concerns and has recently been treated for the following conditions: hypertension, angina, OSA (obstructive sleep apnea), GERD (gastroesophageal reflux disease), systemic inflammatory response syndrome, diabetes mellitus type 2 with hyperglycemia, obesity with BMI of 38.9, hyponatremia, coronary artery disease, prophylaxis, and chronic pain. [*See id.* at 2–3; R. 72-4.] Notably, Mr. Vanover's medical records indicate his diabetes is "under poor control." [R. 72-5.]

And Mr. Vanover has additional health concerns. Following a 2008 car accident, Mr. Vanover underwent an above the knee amputation on his left leg and is now confined to a wheelchair. [*Id.*; R. 74 at 1–2.] Further, in a recent supplemental memorandum, counsel for Mr. Vanover represents that he "recently learned that the Defendant had a medical procedure at the University of Kentucky Medical Center in August whereby he underwent a 4 ½ hour surgery to remove scar tissue from his bowels."[1] [R. 76 at 2.] Based on these extensive medical issues, the United States has filed a response recommending the Court grant the requested relief. [R. 74 at 1–2.]

## II

As an initial matter, the Court notes there is no issue with administrative exhaustion at this point. In its response, the United States did not address whether Mr. Vanover exhausted his administrative remedies within the BOP and, instead, simply recommended the Court grant the

---

[1] Counsel states further that "[m]edical records have been requested, yet not received." [R. 76 at 2.]

requested relief. So, the United States has waived any exhaustion argument and the Court will address the substance of Mr. Vanover's motion. *See Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited."); *see also United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020).

**A**

Section 3582 allows for modification of a term of imprisonment for "extraordinary or compelling reasons." 18 U.S.C. § 3582(c)(1)(A). The statute also requires a court to consider whether such a reduction comports with the 18 U.S.C. § 3553(a) factors and any applicable statements issued by the Sentencing Commission. *Id.* The Sentencing Commission's applicable statement requires a court to consider, in relevant part, whether "(1) extraordinary or compelling reasons warrant a reduction in a defendant's sentence, (2) the defendant is not a danger to the safety of others or the community, and (3) release from custody complies with § 3553(a) factors." *United States v. Lake*, No. CR 5:16-076-DCR, 2019 WL 4143293, at *2 (E.D. Ky. Aug. 30, 2019) (citing U.S.S.G. § 1B1.13 (2018)). So, the Court may only reduce Mr. Vanover's sentence if these three factors are met. U.S.S.G. § 1B1.13. Both Mr. Vanover and the United States contend the factors are met. [*See* R. 74 at 1.]

**1**

As to the first factor, the Sentencing Commission has provided serious medical conditions can constitute "extraordinary and compelling reasons" in the following circumstances:

> (A) <u>Medical Condition of the Defendant</u>. —
> (i) The defendant is suffering from a terminal illness[.] A prognosis of life expectancy . . . is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is —

>   (I)    suffering from a serious physical or medical condition,
>   (II)   suffering from a serious functional or cognitive impairment, or
>   (III)  experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S. Sentencing Guidelines Manual § 1B1.13, cmt. n.1.

Under this standard, the Court finds that Mr. Vanover has established an extraordinary and compelling reason for a sentence reduction. First, it is clear that Mr. Vanover has serious medical conditions that "substantially diminish[] [his] ability . . . to provide self-care." *Id.* Mr. Vanover has Type II diabetes and, with a BMI of 38.9, is significantly obese. Taken in combination, it is unsurprising that his diabetes is "under poor control." [R. 72-5.] These medical conditions alone are cause for concern. But, as noted above, Mr. Vanover also has a myriad of other health concerns, including hypertension, coronary artery disease, and sleep apnea. [R. 72 at 2.] Many of these problems stem from a serious 2008 car accident which required him to have part of his left leg amputated. [R. 72-5.] Obviously, this physical condition can and has led to many complications. Pair these more longstanding medical issues with his recent bowel surgery [R. 76 at 2], and it is clear that Mr. Vanover requires near-constant medical attention.

The Court declines to opine on whether Mr. Vanover is expected to recover from these conditions. U.S. Sentencing Guidelines Manual § 1B1.13, cmt. n.1. It does appear that, when considered as a whole, these conditions present a serious threat to his life. And this is to say nothing of the potential impact of COVID-19 on Mr. Vanover's health. Suffice to say, Mr. Vanover has established he has serious medical conditions which warrant release in order that he may receive outside medical care outside of the prison environment. Consequently, the Court

finds the first factor—an extraordinary and compelling reason for a sentence reduction—is met.

**2**

Next, the Court considers whether Mr. Vanover presents a danger to the "safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As discussed above, Vanover engaged in a conspiracy to distribute Oxycodone and Oxymorphone. [R. 67 at 1.] This is a serious offense that endangers the community at large. But even in light of this past conduct, the United States argues that it believes Mr. Vanover will not be a danger to others if subject to home incarceration.

The Court agrees and finds that Mr. Vanover presents a *de minimis* risk of recidivism. As noted, Mr. Vanover's medical conditions seriously impact his life and likely require near-constant care. Indeed, he is currently wheelchair-bound and it does not appear he will regain increased mobility in the near future given his recent bowel surgery. For these reasons, it is highly unlikely that he could pose a threat to the community by again engaging in similar criminal conduct.[2] To the extent that he might, the United States requests electronic monitoring and a condition prohibiting Mr. Vanover from being in direct contact with others, especially others known to be involved in drug trafficking. [R. 74 at 2.] This is a reasonable approach and the Court will direct the USPO to implement these measures.

---

[2] Generally, to successfully traffic drugs, an individual must personally interact with others—both co-conspirators and buyers. [*See* R. 42 at ¶ 3.] Limited mobility and a closely-monitored living situation will make it extremely challenging for Mr. Vanover to engage in similar conduct. There would be more cause for concern with repeat conduct if, for example, Mr. Vanover had previously engaged in online criminal conduct.

Lastly, the Court finds significant that Mr. Vanover has a specific plan for his care and living arrangements upon release. [R. 76 at 1.] In his recent supplemental memorandum, counsel for Mr. Vanover represents that "[u]pon release from the BOP custody at Federal Medical Center – Lexington, Kentucky, the Defendant's parents will transport him from the facility to their home located at 33 Taylor Circle Road, Williamsburg, Kentucky 40769." *Id.* Counsel also states that Mr. Vanover's parents have agreed to take him to all medical appointments[,] ensure he will get excellent care . . . [and] continue to give the Defendant the support system he needs to build a strong foundation for future success." *Id.* at 1–2. The support offered by his parents also counsels in favor of a finding that Mr. Vanover will pose a limited risk to the community if released.

### 3

Finally, the Court must "consider[] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Careful consideration of these factors previously led the Court to impose a sentence of 42 months imprisonment, followed by three years of supervised release.[3] [R. 67 at 1.] Now, the Court is persuaded that the applicable § 3553(a) factors support Mr. Vanover's request for compassionate release.

As noted, Mr. Vanover has served a significant portion of his 42-month sentence and is slated for release in January 2021. [R. 74 at 2 (citation omitted).] So, the time he has served in prison has achieved much of the original sentence's purpose in terms of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, and providing a deterrent effect. A minor reduction in his sentence will not undo the punishment he has already been subjected to, nor will it eradicate the effects of the Court's original sentence.

---

[3] Mr. Vanover's presentence investigation report, adopted by the Court at sentencing [*see* R. 66], reflects that Mr. Vanover's guideline imprisonment range was 37 months to 46 months.

To this point, while Mr. Vanover will be released from federal custody, he will now serve a period of home incarceration, equal to what would have been the remainder of his time at FMC-Lexington. He will not fully regain his liberty.

Section 3553(a)(2)(D) also instructs a court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Mr. Vanover's need for a sentence that will allow him an opportunity to seek medical treatment is well established. The Court finds that a period of home confinement addresses this need and, at the same time, avoids unwarranted sentencing disparities. On balance, the Court finds the § 3553(a) factors support Vanover's request for compassionate release.

### III

By definition, a sentence reduction is permitted under federal law only in extraordinary circumstances. In this case, Mr. Vanover has established that his serious medical conditions warrant release and, in line with the United States' assurances, the Court is satisfied his release can be monitored such that Mr. Vanover will not be a danger to the public.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

    1.    Defendant Danny Ray Vanover's Motion for Compassionate Release **[R. 72]** is **GRANTED**;

    2.    Defendant shall serve the remainder of his term of imprisonment, ending January 13, 2021, in home incarceration at his parents' home at 33 Taylor Circle Road, Williamsburg, Kentucky 40769. During this time, Defendant may not leave the home except for medical visits or other activities approved in advance by his probation officer;

3. While in home incarceration, Defendant will be subject to all conditions of supervision contained in the original judgment. [R. 67 at 4–5.] During this period, the United States Probation Office is also directed to implement electronic monitoring and a condition prohibiting Mr. Vanover from being in direct contact with others, especially others known to be involved in drug trafficking;

4. Upon Defendant's completion of home incarceration, he must serve three years of supervised release, as contemplated in the original judgment [R. 67 at 3];

5. While on supervised release, Defendant will be subject to all supervised release conditions contained in the original judgment [R. 67 at 4–5];

6. The United States **SHALL** promptly transmit this Order to the BOP; and

7. An amended Judgment will be entered separately.

This the 9th day of September, 2020.

Gregory F. Van Tatenhove
United States District Judge